**UNITED STATES FIDELITY AND GUARANTY COMPANY, a Maryland corporation, Plaintiff,**

**v.**

**NATIONAL INDEMNITY COMPANY, a Nebraska corporation, and Liberty Mutual Insurance Company, a Massachusetts corporation, Defendants.**

No. 65–725–Civ.

United States District Court
S. D. Florida.
July 12, 1966.

James A. Smith, of Wicker, Smith, Pyszka, Blomqvist & Davant, Miami, Fla., for plaintiff.

C. Clyde Atkins, of Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., for National Indemnity Co.

John W. Thornton, of Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, Fla., for defendant Liberty Mut. Ins. Co.

## OPINION

DYER, Chief Judge.

In October 1964 a truck in the control and possession of plaintiff's insured, Dix-

ie Bedding Company, under a contractual agreement with Hunt Truck Leasing & Service, a division of Hunt Truck Sales & Service, Inc., was in an accident in Carrolton, Georgia. Hunt was the defendant National Indemnity's insured and its policy contained an endorsement limiting the coverage of the policy to accidents occurring within 150 miles of Miami, Florida.

The accident resulted in a wrongful death action against Dixie Bedding and its driver. Plaintiff assumed the defense of the wrongful death action and made demand upon the defendant for assumption of the defense or contribution. Defendant refused both. Plaintiff ultimately settled the suit for over $39,000 and seeks indemnification or contribution from defendant.

Defendant had a voluntary automobile liability policy, that is, it was not issued in order to comply with the Florida Financial Responsibility Law. We, therefore, do not have here the situation of a policy issued in order to comply with that law.

Hunt had three previous accidents within the period of the voluntary policy, and as a result Hunt and defendant received "SR–21 Forms"[1] from the Financial Responsibility Division of the State of Florida. Plaintiff asserts that, therefore, certification of defendant's policy occurred by operation of law. This being so, it would follow that the provisions of § 324.151(1) became incorporated in the defendant's policy, thus rendering the 150 mile territorial limit on liability null and void as being in conflict with the specific statutory provisions of the Florida Financial Responsibility Law.

■■■ Under the Florida Financial Responsibility Law of 1955, § 324.011 F.S.A. et seq., when an operator or owner has an accident, he is required to show proof of financial ability to respond for damages in future accidents, § 324.011 F.S.A. He may do this in four different ways under § 324.031 F.S.A., none of which was done here. One of these ways (and the only one we need consider here) is by furnishing satisfactory evidence that he holds a motor vehicle liability policy, which is defined as a policy furnished as proof of financial responsibility under § 324.031 F.S.A. that fulfills certain statutory requirements, § 324.021 F.S.A. The policy furnished as proof then is certified by the insurance company as a motor vehicle liability policy. The effect of this certification and the conformity clause in defendant's policy[2] is to incorporate the provisions of § 324.-151(1) of the Florida Financial Responsibility Laws into the policy. Lynch-Davidson Motors v. Griffin, Fla.App., 171 So.2d 911, Rev'd 182 So.2d 7 (Fla. 1966). This section provides among other things that a motor vehicle liability policy to be proof of financial responsibility shall insure the owner and operator against loss from liability for damages arising out of the use of the vehicle anywhere within the United States of America or Canada. The provisions of this section are not applicable to a voluntary automobile liability policy until it is furnished as proof of financial responsibility for the future pursuant to § 324.031. § 324.151(2) F.S.A., Lynch-Davidson Motors v. Griffin, supra.

Upon this state of the record, each party moved for summary judgment, and there being no genuine issue as to any material fact, the Court may entertain and decide the motions.

Two novel issues of law are presented. Does a voluntary automobile liability policy become certified, by operation of law, as proof of financial responsibility for

---

**1.** SR–21 forms require the insured an insurer to make a report of it if voluntary insurance was in effect at the time of an accident.

**2.** The conformity clause reads as follows: "When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state * * * such insurance as is afforded by this policy shall comply with the provisions of such law."

the future pursuant to the Florida Financial Responsibility Law of 1955, § 324.011 F.S.A., et seq., if the insured has an accident within the period of the policy and receives an SR-21 form on the accident? We hold that it does not.

■■ Second, does a territorial limit on liability in the defendant National Indemnity's policy apply to one isolated trip outside the limited area? We hold that it does.

Plaintiff would impose a heavy non-contractual liability upon the writers of voluntary automobile liability policies. When an owner or operator is involved in an accident, he is sent an SR-21 form by the Florida Financial Responsibility Division and is required to state only: the names of the owner and operator; whether or not he was insured for that particular accident; and if so, the names of the insurer and policy holder; the policy number, coverage dates, and the selling agent.

■ Neither the receipt nor return of Form SR-21 has any bearing on the certification of a policy as proof of financial ability to respond for damages in future accidents. If a mere accident and receipt of the SR-21 forms by the insured or insurer constituted certification by operation of law, insurers would be most hesitant to write any policies containing coverage more limited than the required statutory coverage of the Florida Financial Responsibility laws. For the insurer, while intending limited liability, and because of that intent, offering the policy at a reduced premium, would suddenly be subjected to liability throughout the United States and Canada. The insurer thus would be exposed to a liability he not only did not contract for, but expressly excluded from coverage.

We do not think the Florida Legislature, in passing the Financial Responsibility Law, had in mind this choking effect on the freedom of the parties to enter into a voluntary automobile liability policy with limited liability.

The onus of complying with the Florida Financial Responsibility Law belongs on the insured and cannot be so easily shifted to the insurer. If the insured fails to comply, he is subject to certain penalties, but to avoid this he simply may get another policy complying with the law and have the insurer file certification on that policy, or he may have his insurer file certification under the voluntary policy which then will become conformed to the Florida Financial Responsibility Law requirements, or he may comply with the other statutory provisions for proof of financial responsibility.

■ We hold that a voluntary automobile liability policy does not become certified as a motor vehicle liability policy under the Florida Financial Responsibility Laws by operation of law when an accident occurs during the period of the policy, and SR-21 forms are received by the insurer or insured in connection with the accident.

■■ There remains the question of whether the 150 mile limit on liability contained in defendant's policy is valid. The language of the endorsement contaning the limitation is absolute.

> "In consideration of the reduced premium * * * it is * * * understood * * * that no coverage shall be in effect under this policy at any time during which the insured property is more than 150 miles from * * * [Miami]."

Plaintiff relies on numerous cases holding that territorial limitations on coverage do not apply to void the coverage in the case of one isolated trip. In those cases there was no absolute denial of liability for accidents occurring beyond the proscribed radius. Instead they limited the "regular and frequent use" or "customary use" or "principal use" of the insured vehicle to a territorical radius. The language in the defendant National Indemnity's endorsement is clear: no coverage whatsoever when the vehicle is beyond the 150 mile radius. Carrolton, Georgia, is well beyond the proscribed

**448**

radius. Therefore, defendant's policy does no cover this particular accident.

Defendant's motion for summary judgment is therefore granted and plaintiff's motion for summary judgment is denied.

An order in accordance with this Opinion is to be settled and submitted within ten (10) days.

